UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LISA KAY DARLING,                          Case No. 14-14043

              Plaintiff,                 Michael Hluchaniuk
v.                                         United States Magistrate Judge

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____/

**OPINION AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 16)**

**I.     PROCEDURAL HISTORY**

      A.     Proceedings in this Court

On October 21, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) and Local Rule 72.1(b)(3), District Judge Judith E. Levy referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims.  (Dkt. 4).  On April 27, 2015, plaintiff filed her motion for summary judgment.  (Dkt. 13).  Two days later, the parties filed a notice of consent and reference of a civil action for the undersigned to conduct all proceedings.  (Dkt. 14).  On May 4, 2015, District Judge Levy entered the consent and reference for the undersigned to conduct all proceedings

in this matter.  (Dkt. 15).  On May 27, 2015, the Commissioner filed its motion for

summary judgment (Dkt. 16), and on June 10, 2015 plaintiff replied (Dkt. 17).

      B.    Administrative Proceedings

Plaintiff protectively filed a Title XVI application for supplemental security

income on January 27, 2012, alleging a disability beginning January 1, 2008.[1]  (Tr.

157-162).  The Commissioner initially denied plaintiff's disability application on

April 6, 2012.  (Tr. 85-97).  Thereafter, plaintiff requested an administrative

hearing, and on April 9, 2013, she appeared with counsel before Administrative

Law Judge ("ALJ") Kevin W. Fallis, who considered her case de novo.  (Tr. 52-

84).  In a May 29, 2013 decision, the ALJ determined that plaintiff was not

disabled within the meaning of the Social Security Act.  (Tr. 34-51).  Plaintiff

requested a review of this decision, and the ALJ's decision became the final

decision of the Commissioner when, after the review of additional exhibits,[2] the

Appeals Council on August 29, 2014, denied plaintiff's request for review.  (Dkt.

11-2, Pg ID 7-12); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir.

---

[1] Plaintiff subsequently amended her disability onset date to January 27, 2012.  (Tr. 174).

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

2004).  Plaintiff filed this suit on October 21, 2014.  (Dkt. 1).

For the reasons set forth below, plaintiff's motion for summary judgment is **GRANTED** in part and **DENIED** in part, the Commissioner's motion for summary judgment is **GRANTED** in part and **DENIED** in part, the findings of the Commissioner are **REVERSED** in part and **AFFIRMED** in part, and this matter is **REMANDED** for further proceedings consistent with this Opinion and Order under Sentence Four.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since January 27, 2012, the application date.  (Tr. 39).  At step two, the ALJ found that plaintiff had the following severe impairments: chronic obstructive pulmonary disease, asthma, bipolar disorder, and anxiety (20 C.F.R. § 416.920(c)).  (*Id.*)  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations.  (Tr. 40).

The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 416.967(b) except stand
> and walk for about 6 hours and sit for up to 6 hours in an
> 8-hour work day, with normal breaks; no climbing

3

> ladders, ropes or scaffolds; occasional climbing of ramps
> or stairs; occasional balancing, stooping, kneeling,
> crouching and crawling; frequent bilateral handling of
> objects, defined as gross manipulation; frequent bilateral
> fingering, defined as fine manipulation of items no
> smaller than the size of a ballpoint pen; avoid even
> moderate exposure to extreme heat, extreme cold and to
> humidity; avoid all use of hazardous moving machinery;
> avoid all exposure to unprotected heights; work is
> limited to simple, routine and repetitive tasks performed
> in a work environment free of fast-paced production
> requirements involving only simple work-related
> decisions and routine work place changes.

(*Id*.)  At step four, the ALJ determined that plaintiff was unable to perform her past relevant work as a cashier or receptionist.  (Tr. 45).  At step five, the ALJ concluded that based on plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform and, therefore, she has not been under a disability since January 27, 2012, the date her application was filed.  (Tr. 46).

     B.    <u>Plaintiff's Claims of Error</u>

     1.    The ALJ impermissibly discounted the opinions of plaintiff's treating physician and the Agency's consulting examiner, and failed to give the necessary "good reasons" for discounting those opinions.

Plaintiff argues that the ALJ failed to take into account the limitations that her treating therapist, Ms. Lisa Brown-Fagan, assigned to her, including the fact that she would be unable to meet competitive standards in maintaining regular

attendance and punctuality, sustain an ordinary routine without special

supervision, work in coordination or close proximity to others without distracting

them, make simple decisions, ask simple questions, interact appropriately with

supervisors, get along with co-workers without exhibiting behavioral extremes,

respond to changes in a routine work setting, deal with normal work stress, or

complete a normal workday or work-week without interruption from

psychological symptoms. (Tr. 260). Plaintiff also argues that the ALJ failed to

consider the Agency's consulting examiner, Dr. Matthew Dickson, who assessed

her as having moderate impairments in her ability to function socially in the

workplace. (Tr. 245). Dr. Dickson specifically concluded that plaintiff's ability to

"respond appropriately to coworkers and supervision and to adapt to change and

stress in the workplace are moderately impaired." (*Id*.)

Plaintiff further says that the ALJ failed to give the necessary "good

reasons" for rejecting the opinions of her treating mental health counselor, and the

Agency's consulting examiner with respect to her social limitations. Plaintiff

acknowledges that, as a licensed counselor, Ms. Brown-Fagan is considered a

"nonacceptable medical source" under Agency policy, however, plaintiff argues

that such opinions are nevertheless still valuable sources of information regarding

her limitations. Indeed, plaintiff notes that the Agency's rules acknowledge that in

some circumstances, the opinion of a non-acceptable source may even be entitled

to more weight than an acceptable source.  SSR 06-03p; 71 Fed. Reg. 45593-97

(Aug. 9, 2006).  Plaintiff contends that the ALJ, therefore, must evaluate these

"non-acceptable" source opinions using the same factors set forth in 20 C.F.R.

§ 404.1527(c).

Plaintiff also claims that the ALJ erred when he did not follow Agency

policy and discuss his reasons for rejecting the opinion of Agency consultative

examiner, Dr. Dickson in accordance with 20 C.F.R. § 404.1527(c).  Plaintiff

argues that Dr. Dickson is an expert in psychology and also an expert in the Social

Security disability programs.  *See* §§ 404.1527(c), (f).  Plaintiff claims that the

ALJ did not offer any specific reasons for discounting Dr. Dickson's assessment

of plaintiff's social limitations other than favoring his own assessment of

plaintiff's social skills.  (Tr. 45).

Plaintiff also claims that the ALJ oversimplified the factual record.  In

rejecting the idea that plaintiff suffered from social limitations, the ALJ pointed to

plaintiff's recent marriage, contact with friends and family, and generally getting

along with others.  (Tr. 43).  Plaintiff acknowledges that she reported to Ms.

Brown-Fagan having a good relationship at a June 9, 2012 appointment (Tr. 379),

however, within a matter of weeks, Ms. Brown-Fagan reported that plaintiff was

unsure of her marital relationship and had left the marital home.  (Tr. 374).  Notes

from Brown-Fagan discuss plaintiff's impulsiveness regarding her marriages, her

6

co-dependency issues, excessive sleeping, and Brown-Fagan's request for

psychiatric medication by June 30, 2012.  (Tr. 374-380).

> 2.     The ALJ erred when he rejected the opinion of plaintiff's
>         treating physician, Dr. Goleba, which indicated that plaintiff
>         had physical limitations far greater than those set forth in the
>         RFC.

Plaintiff's treating physician, Dr. Maria Goleba, had seen plaintiff on a

monthly basis since August 2010, and completed a medical source statement on

February 3, 2012.  (Tr. 323).  Dr. Goleba concluded that plaintiff could sit for four

hours and stand/walk for three hours in the course of an eight hour day.  She also

reported that plaintiff had been diagnosed with asthma and COPD.  (*Id*.)  Dr.

Goleba opined that plaintiff's prognosis was poor due to shortness of breath,

dyspnea and wheezing.  (*Id*.)  Dr. Goleba indicated that plaintiff would be absent

from work more than three times per month and could not sustain competitive

work on a full-time basis.  (Tr. 325, 327).  In May 2012, Dr. Goleba completed a

second medical source statement and concluded that plaintiff could only sit for

four hours per day and stand/walk for four hours per day.  Dr. Goleba further

concluded that plaintiff would not be able to sit continuously in a work setting.

(Tr. 405).  Dr. Goleba estimated plaintiff's fatigue level at an 8-out-of-10 level.

(Tr. 404).  Dr. Goleba again concluded that plaintiff would be absent from work

more than three times per month as a result of her physical impairments.  (Tr.

408).

Plaintiff also notes that the Agency's consultative examiner, Dr. Simpson, did not assess specific limitations, but found diminished breath sounds and some prolongation of plaintiff's expiratory phase which is suggestive of some degree of obstruction of flow. (Tr. 251).

Plaintiff argues that the foregoing opinions with respect to her physical limitations are supported by the medical evidence. For example, plaintiff had been prescribed a nebulizer to use four times per day. (Tr. 328). Plaintiff was also taking multiple medications to control her asthma. At an April 30, 2012 appointment, Dr. Goleba observed that plaintiff's asthma was severe with cough, shortness of breath, and chest pains. (Tr. 333). The cough persisted at follow-up appointments, when Dr. Goleba renewed plaintiff's medications. (Tr. 332, 330). Dr. Goleba has treated plaintiff since before the amended disability onset date, which plaintiff agues establishes a longitudinal picture of her respiratory impairments. On November 22, 2011, Dr. Goleba assessed plaintiff's asthma as severe and opined that she was totally disabled. (Tr. 353). Plaintiff also presents evidence of treatment for respiratory illness in 2009. (Tr. 305, 307, 308). In November 2010, Dr. Goleba even referred plaintiff to a specialist, Dr. Joseph Varghese, who assessed her with chronic bronchitis, and with severe breathing difficulties during respiratory infections. Dr. Varghese indicated that plaintiff's

8

infections occurred several times per year and that plaintiff's symptoms had progressively worsened. (Tr. 303). Moreover, Dr. Varghese reported that plaintiff was symptomatic with dyspnea even during ordinary activities. (Tr. 304).

Plaintiff claims that the ALJ failed to offer the necessary "good reasons" for rejecting the opinions of her treating physician Dr. Goleba with respect to her physical limitations. The ALJ gave Dr. Goleba's opinion "little" weight with no reference to the C.F.R. § 404.1527 factors. Plaintiff argues that the ALJ's stated reasons for discounting Dr. Goleba's opinion are unfounded. First, the ALJ discounted Dr. Goleba's opinion because he indicated that "the claimant remained fairly stable with her medications." (Tr. 45). Plaintiff, however, says that "fairly stable" is a relative term indicating symptoms which are enduring but not varying dramatically, but this does not provide insight into whether plaintiff's symptoms are disabling. The ALJ also discounted Dr. Goleba's opinion because he concluded that "the claimant ... had not had severe exacerbations of her chronic obstructive pulmonary disease or asthma, [and . . . ] the claimant was not referred for any consistent treatment with a pulmonologist nor had she had the need for frequent pulmonary testing." (*Id*.) Again, plaintiff points out that Dr. Goleba's notes reference her "severe" symptoms and also a referral to a specialist who assessed those symptoms. Plaintiff also complains that the ALJ did not discuss the consistency between Dr. Goleba's opinion and that of the State Agency expert's,

9

Dr. Simpson.  In fact, the ALJ failed to assign weight to Dr. Simpson's opinion at all.  (Tr. 42).

Plaintiff suggests that if the ALJ had questions regarding plaintiff's impairments or symptoms, or regarding the consistency of the medical opinions in the record, he could have arranged for additional examinations, enlisted a review by a medical expert, or re-contacted the medical experts to seek additional information.  *See* SSR 12-2p; 20 C.F.R. § 404.1520b(c)(1); Hearings, Appeals, and Litigation Manual (HALLEX) § I-2-5-34.  Ultimately, the ALJ chose to do none of these things, and instead, according to plaintiff, impermissibly relied on his own lay analysis of the raw medical data.  *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings."); *see also Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008); *see also, Wyatt v. Comm'r of Soc. Sec.*, 2013 WL 4483074 (E.D. Mich. 2013).

> 3.     The ALJ erred when he failed to consider plaintiff's GAF ratings.

Plaintiff claims that the ALJ erred when he failed to mention any of the GAF ratings in the record which confirm plaintiff's serious and/or moderate impairments in social or occupational functioning.  In June 2012, Dr. Shah, a

psychiatrist at Auburn Counseling Associates, assessed plaintiff's GAF to be a 50. (Tr. 386). In August 2012, Dr. Shah assessed plaintiff's GAF to be a 48. (Tr. 395). On July 31, 2012, plaintiff's counselor, Ms. Brown-Fagan, also assessed her GAF to be a 48. (Tr. 258). The highest GAF in the record was assessed by Dr. Simpson to be a 54, which is consistent with moderate difficulty in social or occupational functioning.

While plaintiff does not argue that a GAF constitutes an RFC finding, she does aver that the scores are relevant evidence that the ALJ may not overlook or misrepresent, since SSA concedes that GAFs are an example of "valuable additional functional information" that can be provided by a treating source. Social Security Administration, Proposed Rules, Mental Disorders in Adults, 56 Fed. Reg. 33,130, 33,132 (July 18, 1991). Plaintiff contends that the ALJ erred when he failed to indicate how this evidence weighed in his mind one way or the other, requiring a remand for further proceedings.

4.  The RFC is not supported by substantial evidence

Plaintiff argues that the RFC and hypothetical to the vocational expert do not include any social limitations whatsoever, despite the evidence in the record that support a finding that plaintiff was so impaired. When a claimant has a severe mental impairment, as acknowledged by the ALJ at step 2 (Tr. 39), the mental RFC assessment must include "all limits on work-related activities resulting from

the mental impairment." SSR 85-16. *Howard*, 276 F. 3d 235 (an

RFC/concomitant hypothetical which does not set forth all of the claimant's

individual impairments and limitations cannot, as a matter of law, be substantial

evidence supporting an ALJ's denial of benefits).   Here, the ALJ did not include

any social limitations whatsoever, which was contrary to the substantial evidence

of record.

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

        1.    Substantial evidence supports the ALJ's assessment of
plaintiff's social functioning where the record reflects some
issues with romantic relationships, but no limitations in work-
related activities.

The Commissioner argues that the ALJ observed that plaintiff did not have

any problems getting along with family, friends, or neighbors, and that she could

get along with authority figures.  (Tr. 44, 244).  The ALJ declined to include a

limitation in social functioning in the RFC assessment and this determination is

supported by substantial evidence.  The Commissioner contends that while

plaintiff highlights her relationship histories that suggests that she might have

difficulties with romantic relationships, she does not make a connection in those

relationships with an inability to interact with co-workers, supervisors, or to the

general public. *Cf. White v. Commissioner of Social Sec.*, No. 1:14-cv-218, 2015

WL 470812, at *9 (S.D. Ohio Jan. 7, 2015) ("Plaintiff's social history-including

one marriage/divorce, an engagement/live-in boyfriend, and regular contact with

friends and family—also supports the ALJ's determination that Plaintiff does not

have listing level deficits.")

> 2.    Substantial evidence supports the ALJ's assessment of Dr.
> Goleba's opinion and plaintiff's physical RFC where he
> accounted for plaintiff's respiratory difficulties.

The Commissioner notes that the ALJ afforded "little weight" to Dr.

Goleba's opinion because the ALJ determined that plaintiff had:

> diminished breath sounds on examination, [she] had not
> had severe exacerbations of her chronic obstructive
> pulmonary disease or asthma. [Plaintiff] was not referred
> for any consistent treatment with a pulmonologist nor
> had she had the need for frequent pulmonary function
> testing. [She] remained fairly stable with her
> medications.

(Tr. 45).  The Commissioner argues that substantial evidence supports the ALJ's

conclusions.  First, the Commissioner points out that Dr. Goleba's second opinion

was not signed, therefore, the ALJ was unable to evaluate it.  (Tr. 42).  Second, the

Commissioner argues that the second opinion reflects that plaintiff's condition had

improved, indicating that she had no pain.  (Tr. 404).  Further, the only significant

change in Dr. Goleba's second opinion was that he rated plaintiff's fatigue level

an eight rather than a three.  The two opinions are consistent in that Dr. Goleba

opined that plaintiff would miss more than three days of work each month as a

result of her physical impairments.  (Tr. 325, 404).  Regarding Dr. Goleba's

13

sitting limitation, the Commissioner indicates that plaintiff does not argue that this limitation was supported by the record or otherwise develop this argument. The Commissioner argues that the ALJ properly accounted for plaintiff's fatigue and reasonably afforded "little weight" to Dr. Goleba's opinions.

In addition, the Commissioner contends that plaintiff exhibited no rales or rhonchi, and that medication management and cessation of smoking was suggested. (Tr. 43, 249, 251). Further, Dr. Goleba's notes indicated that she was not regularly symptomatic or in need of more serious treatment. For example, in February 2012, plaintiff had no problems with her COPD or asthma. (Tr. 42, 343). She also had no respiratory symptoms in April 2012, and her asthma was controlled with medication. (Tr. 43, 333). In October 2012, plaintiff denied any symptoms. (Tr. 44, 398). For all of these reasons, the Commissioner argues that the ALJ provided ample reasons for rejecting Dr. Goleba's more limiting assessments.

With respect to Dr. Simpson's opinion, the Commissioner likewise contends that the ALJ reasonably accounted for plaintiff's medications and for her examination with Dr. Simpson. (Tr. 43).

In contrast to her mental limitations, the Commissioner contends that plaintiff did not argue that she could not perform the exertional requirements of the suggested jobs. Here, although not stated in the RFC, the ALJ's hypothetical

14

questions to the vocational expert limited plaintiff to avoiding even moderate exposure to environmental irritants such as fumes, odors, dusts, and gases.  (Tr. 79).  The Commissioner indicates that plaintiff raises no argument that the ALJ erred in not including this restrictive language in the RFC, thus there is no error.

The Commissioner also rejects plaintiff's argument that the ALJ should have requested additional medical opinions, as no such opinion was necessary where the ALJ was able to make a common-sense assessment based on the record. *See e.g.*, *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) ("The ALJ has discretion to determine whether additional evidence is necessary."); *see also Spuhler v. Colvin*, No. 2:13-CV-12272, 2014 WL 4855743, at *19 (E.D. Mich. June 17, 2014) report and recommendation adopted in part, No. 2:13-CV-12272, 2014 WL 4856153 (E.D. Mich. Sept. 30, 2014) (citations omitted) (noting that an ALJ can make "commonsense" judgments about a claimant's RFC).

### D.    Plaintiff's Reply

Plaintiff argues that the ALJ did not comply with its requirements as set forth in § 404.1527, and the Commissioner's brief does not dispute this. Moreover, plaintiff claims that the Commissioner does not dispute the evidence, and does not dispute that the ALJ failed to evaluate Dr. Goleba's second opinion or failed to follow the proper analysis regarding his first opinion with no reference

to the required good reasons when he discounted it.   Finally, plaintiff points out

that the Commissioner does not contest that plaintiff suffers from significant social

limitations related to plaintiff's mental impairment, and that the RFC does not

include any social functioning limitations.

Plaintiff contends that the ALJ's failure to evaluate the medical opinions in

light of Dr. Goleba's status as his treating physician, is reversible error.  Here, if

the ALJ had questions about Dr. Goleba's opinion, he could have ordered a

consultative examination, medical testimony at the hearing, or could have re-

contacted the physicians of record.  Instead, the ALJ impermissibly supplanted

medical evidence via his own lay opinion.  Since the ALJ's analysis proceeded to

Step 5 of the sequential evaluation, the burden of proof shifted to the ALJ.

Therefore, plaintiff argues that she had no burden at Step 5, and defendant's

suggestion that her prior counsel should have questioned the vocational expert is

unfounded.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

16

administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . .

consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

18

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et*

*seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

20

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   <u>Analysis</u>

1.   Medical Opinion Evidence

"Medical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (2006).

> An opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a

22

> "nonexamining source"), and an opinion from a medical
> source who regularly treats the claimant (a "treating
> source") is afforded more weight than that from a source
> who has examined the claimant but does not have an
> ongoing treatment relationship (a "nontreating source").

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (internal

citations omitted).

Plaintiff first argues that the ALJ erred when he discounted the opinion of

her treating mental health therapist, Lisa Brown-Fagan, and did not provide the

necessary "good reasons" for doing so. (Tr. 43). The ALJ noted that Ms. Brown-

Fagan, as a therapist, was not an acceptable medical source, but that he

nevertheless considered her opinion. (*Id.*) The ALJ specifically indicated that he

reviewed and considered Ms. Brown-Fagan's opinion regarding plaintiff's mental

health limitations, but ultimately concluded that her opinion was not consistent

with the medical record. (*Id.*)

Plaintiff concedes that Ms. Brown-Fagan is not an acceptable medical

source under SSR guidelines. SSR 06-03p provides that "[o]pinions from ...

medical sources [ ] who are not technically deemed 'acceptable medical sources'

under [the agency's] rules[ ] are important and should be evaluated on key issues

such as impairment severity and functional effects." SSR 06-03p. However,

contrary to plaintiff's suggestion, there is no requirement that the ALJ must

expressly discuss every piece of record evidence. *See Kornecky v. Comm'r of Soc.*

*Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").  Rather, "SSR 06–03p requires an ALJ to consider the opinions expressed by these 'other' medical sources." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. Appx. 485, 489 (6th Cir. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").  Additionally, an ALJ is not required to provide good reasons for the weight given to the opinions of medical opinions that are deemed not acceptable under §§ 404.1527(d)(2), 416.927(d)(2).  *Mulkey v. Comm'r of Soc. Sec.*, 2011 WL 4528485, at *7 (W.D. Mich. June 14, 2011) (noting there is no requirement that the ALJ articulate good reasons for his or her decision assigning specific weight to the opinion of such a source), adopted by 2011 WL 4528479 (W.D. Mich. Sept. 29, 2011).

Here, the ALJ discounted Ms. Brown-Fagan's opinion regarding plaintiff's social limitations because plaintiff had reported in a previous mental evaluation, only a few months prior to starting therapy with Ms. Brown-Fagan, that she had just been married, had contact with friends and family, that she generally got along with others, and that while employed her interactions with others were satisfactory.  (Tr. 43).  In addition, the ALJ credited the plaintiff's testimony that she did a lot of reading, light dusting, and some light housekeeping tasks, ran a

24

vacuum, cooked, shopped independently, and did laundry. (*Id*.) Plaintiff could also drive a car and had a license. To the extent that plaintiff contends that the ALJ did not assign a weight to Ms. Brown-Fagan's opinion, the undersigned concludes that any error in that regard is harmless in this case. Indeed, the ALJ indicates that he adopted the mental limitations of Dr. T. Tsai "as they are consistent with the medical evidence of record[,]" (Tr. 45), and "finds that [Ms. Brown-Fagan's] opinion is not consistent with the medical evidence of record" (Tr. 43) thus providing a logical bridge of comparison for the reviewer to follow. The undersigned concludes that the ALJ reasonably determined that plaintiff was not markedly limited in any of her mental and/or social abilities and was not under an obligation to discuss all of the evidence in the record when he discounted Ms. Brown-Fagan's opinion.

Plaintiff next claims that the ALJ erred with he assigned "little weight" to the opinion of her treating physician, Dr. Goleba, who opined that plaintiff was only capable of sitting for four hours in an eight-hour day, and stand and walk for three hours in an eight-hour day. (Tr. B8F). Dr. Goleba additionally concluded that plaintiff could only occasionally lift up to 10 pounds and that she would have difficulty with repetitive fingering, reaching, handling, and lifting. Dr. Goleba further concluded that plaintiff needed to avoid wetness, temperature, extremes, fumes, humidity and dust. She also stated that plaintiff would be absent from a job

25

more than three times per month and that plaintiff would not be able to perform a

full time competitive job on a sustained basis.  Despite these recommendations,

the ALJ determined that plaintiff had the capacity to perform light work except

that she could stand and walk for about six hours and sit for up to six hours in an

eight-hour work day, with normal breaks.  (Tr. 40).  In addition, the ALJ

concluded that plaintiff had the RFC to perform light work except:

> no climbing ladders, ropes or scaffolds; occasional
> climbing of ramps or stairs; occasional balancing,
> stooping, kneeling, crouching and crawling; frequent
> bilateral handling of objects, defined as gross
> manipulation; frequent bilateral fingering, defined as fine
> manipulation of items no smaller than the size of a
> ballpoint pen; avoid even moderate exposure to extreme
> heat, extreme cold and to humidity; avoid all use of
> hazardous moving machinery; avoid all exposure to
> unprotected heights; work is limited to simple, routine
> and repetitive tasks performed in a work environment
> free of fast-paced production requirements involving
> only simple work-related decisions and routine work
> place changes.

(Tr. 40).

Importantly, as noted above, in weighing the medical evidence, ALJs must

not succumb to the temptation to play doctor and make their own independent

medical findings.  *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th

Cir. 2009) (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir.1996)).

Accordingly, an ALJ may not substitute his [or her] own medical judgment for that

of the treating physician where the opinion of the treating physician is supported by the medical evidence. *Id.* (internal quotations omitted); *see also Bledsoe v. Comm'r of Soc. Sec.*, 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011) (An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings.); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008) (The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.). In other words, [w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay medical opinion for that of a treating or examining doctor. *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), adopted by 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC is reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov.4, 2009) (The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings

27

are crucial to determining a claimant's RFC because [i]n making the residual

functional capacity finding, the ALJ may not interpret raw medical data in

functional terms.), quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp. 2d 908, 912

(N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999) (As a

lay person, however, the ALJ was simply not qualified to interpret raw medical

data in functional terms and no medical opinion supported the [RFC]

determination.); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985) (By

independently reviewing and interpreting the laboratory reports, the ALJ

impermissibly substituted his own judgment for that of a physician; an ALJ is not

free to set his own expertise against that of a physician who presents competent

evidence.).

Here, the ALJ assigned "little weight" to treating physician Goleba's

opinion because he concluded that plaintiff had not experienced severe

exacerbations of her chronic obstructive pulmonary disease or asthma.  (Tr. 45).

Further, the ALJ supported his conclusions based on the fact that plaintiff had not

been referred for any consistent treatment with a pulmonologist, nor had she had

the need for frequent pulmonary function testing.  (*Id.*)  Finally, the ALJ

determined that plaintiff remained "fairly stable" with her medications.  (*Id.*)  The

ultimate RFC in this case discounted the recommendations of plaintiff's treating

physician, however, the undersigned is not able to discern how the ALJ formulated

28

his RFC recommendations.  The ALJ does not indicate from what medical opinion
he draws the physical limitations that he incorporates into his RFC findings.
Because there does not appear to be a medical underpinning for the ALJ's RFC
determination, and he essentially interprets the raw medical data in functional
terms, the undersigned concludes that the ALJ erred when he failed to adopt the
findings of plaintiff's treating physician, Dr. Goleba.  The undersigned also notes
that the ALJ declined to adopt Dr. Goleba's opinion in a case where there does
appear to be medical evidence that supports her opinion, including treatment for
plaintiff's pulmonary disease and asthma, prescription medications, and a referral
to at least one specialist, Dr. Varghese, who indicated that plaintiff was
symptomatic even during routine activities.

Although ultimately a finding of no disability is possible in this case,
substantial evidence does not exist on the record to support the current RFC
determination because there is no supporting functional determination by a
consulting physician or expert medical advisor.  Thus, the ALJ's RFC
determination (at least in part) was not based on any medical opinion but was
apparently formulated based on his own independent medical findings.  Under
these circumstances, the undersigned concludes that a remand is necessary to
obtain a proper medical source opinion regarding plaintiff's physical limitations.
The undersigned also concludes that the ALJ did not give sufficient good reasons

for rejecting the treating physician's opinion regarding plaintiff meeting a Listing. This too should be reassessed after the opinion of a medical advisor is obtained.

## IV.   RELIEF

For the reasons set forth above, plaintiff's motion for summary judgment is **GRANTED** in part and **DENIED** in part, the Commissioner's motion for summary judgment is **GRANTED** in part and **DENIED** in part, the findings of the Commissioner are **REVERSED** in part and **AFFIRMED** in part, and this matter is **REMANDED** for further proceedings consistent with this Opinion and Order under Sentence Four.

**IT IS SO ORDERED.**

Date: October 8, 2015              s/Michael Hluchaniuk
                                   Michael Hluchaniuk
                                   United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on October 8, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov